Meyer, J.
(dissenting). Because the majority’s holding misconstrues both the New York and the North Carolina statutes, I respectfully dissent.
Subdivision 5 of section 672 of the Insurance Law requires that “Every owner’s policy of liability insurance issued in satisfaction of articles six or eight of the vehicle and traffic law shall also provide, when a motor vehicle covered by such policy is used or operated in any other state or in any Canadian province, insurance coverage for such motor vehicle at least in the minimum amount required for such vehicle by the laws of such other state or Canadian province.” In total disregard of the words “for such * * * vehicle” in that subdivision the Appellate Division majority stated that “North Carolina at the time of this accident required residents and nonresidents to be insured for an amount not less than $15,000” (80 AD2d *170 130, 131; italics supplied) and concluded that North Carolina’s law “imposes a requirement on the nonresident of conforming to the minimum amount of insurance coverage mandated by the laws of North Carolina” (80 AD2d 130, 134; italics supplied). Not only was that an incorrect application of the New York law but also it misinterprets the North Carolina statutes. The majority in this court, recognizing in part the Appellate Division’s error, admits that (p 168) “North Carolina, strictly speaking, does not require nonresidents to carry insurance in the limits prescribed by it ah initio,” but concludes that “the nature of [the] over-all plan is such that * * * New York * * * could hardly have failed to insist on the ultimate security of the North Carolina insurance limits”. Thus, though correctly conceiving what the North Carolina statute does, the majority nevertheless sustains the Appellate Division’s result, ignoring not only the phrase “for the vehicle” in our statute, but the word “required” (which relates not to what New York might have required but what North Carolina law required) in that statute as well.
The simple facts are that our statute does not say “in the minimum amount that would be required for such vehicle if it were registered in such other state,” and that North Carolina has not one but two financial responsibility acts, one (the 1957 act) relating to registration of vehicles and requiring a liability policy with a minimum of $15,000 (NC Gen Stats, § 20-309), and the other (the 1953 act) relating to the license of the operator or owner of a motor vehicle involved in “a motor vehicle accident within this State which has resulted in bodily injury or death or damage to the property of any one person in excess of two hundred dollars”, but which does not require the filing of security or other proof of financial responsibility until after such an accident (NC Gen Stats, § 20-279.5).*
As the majority’s footnote 1 acknowledges, a passenger vehicle registered in New York is not required to be registered in North Carolina (NC Gen Stats, §§ 20-4.8, 20-51, subd [1]), unless its owner takes up permanent or *171 temporary residence in that State extending beyond 30 days (NC Gen Stats, § 20-4.6; see § 20-313). The Padilla vehicle was, however, simply in transit through North Carolina on the way to Florida. Therefore, the $15,000 minimum provided for in the 1957 statute was not “required for such [Padilla’s] vehicle by the laws of” North Carolina within the meaning of subdivision 5 of section 672 of the Insurance Law.
The 1953 statute, on the other hand, while it does not require insurance coverage for any vehicle, does provide for the suspension of a nonresident’s privilege of operating a motor vehicle in North Carolina. Suspension can only occur, however, after the nonresident operator has had an accident and has failed to present to the commissioner evidence of a release from liability, a final adjudication of nonliability, or a written agreement for the payment of an agreed amount, or to deposit the amount of security the commissioner deems sufficient to satisfy any and all judgments for damages resulting from the accident (NC Gen Stats, § 20-279.5, subds [a], [b]; see, also, §§ 20-21, 20-22). The suspension provisions of the 1953 act do not apply, however, under the conditions stated in subdivision (c) of section 20-279.5 and section 20-279.6. One such condition is the existence of a liability policy or bond covering the vehicle or its owner or operator “to a limit, exclusive of interest and cost [sic], of no less than fifteen thousand dollars” (NC Gen Stats, § 20-279.5, subd [c]). Clearly, therefore, the 1953 act does not, either before or after an accident, require that a nonresident operator driving a vehicle registered in his State of residence, who has not resided in North Carolina for more than 30 days, be insured in any amount. All that it does is excuse such a nonresident driver from the suspension after an accident of his nonresident’s privilege of operating a vehicle in North Carolina on a number of bases, one of which is that at the time of the accident he had insurance with a $15,000 minimum. To be noted, furthermore, is the fact that suspension is in any event not immediate or automatic; section 20-279.5 does not authorize suspension until the expiration of 20 days after receipt of a report of the accident or permit a notice of suspension to become effective until not less than 10 days after it is sent to the operator or owner.
*172 That the interpretation of the two acts above set forth is that accorded them by the North Carolina Supreme Court is made clear beyond dispute by Faizan v Grain Dealers Mut. Ins. Co. (254 NC 47), cited by the majority. The opinion in that case describes the two acts as follows (254 NC 47, 52-54):
“(a). The 1953 Act.
“This Act applies to those persons whose driver’s licenses have been suspended by reason of violations of motor vehicle statutes, failure to pay and discharge judgments for damages resulting from ownership or operation of motor vehicles, or failure to prove financial responsibility where damages have been occasioned by the ownership or operation of motor vehicles. It is provided that such persons, where they are otherwise entitled to restoration of driver’s licenses, must prove financial responsibility before such licenses may be restored. The financial responsibility must then be maintained for two years. One method of proving and maintaining financial responsibility is to obtain automobile liability insurance as defined by, and in compliance with, G.S. 20-279.21.
* * *
“(b). The 1957 Act.
“This Act requires proof of financial responsibility by all motor vehicle owners who apply to the Department for North Carolina registration certificates and plates. Financial responsibility may be shown by procurement of automobile liability insurance. Before a motor vehicle may be registered and registration plates obtained, a certificate of insurance coverage (FS-1) must be delivered by an insurer to the Commissioner.
* * *
“The 1953 Act applies to a limited class of motorists — those whose driver’s licenses have been suspended. These motorists must show financial responsibility as a condition precedent to restoration of their driver’s licenses. The 1957 Act applies to an unlimited class — all motor vehicle owners. Before obtaining periodic registration certificates and plates for vehicles, they must prove financial responsibility. One Act relates to restoration of driver’s license, the other to motor vehicle registration.”
*173 Not only is the majority’s conclusion inconsistent with the statutes in both States, but also its policy rationale is difficult to understand. North Carolina can, if it sees fit to do so, impose upon the owners or drivers of vehicles registered in other States the obligation of carrying insurance in a stated and reasonable amount as a condition of the use of its highways in order to protect its residents (and itself if they be impecunious) against the expenses and other results of an accident within its borders (see Hess v Pawloski, 274 US 352; Leighton v Roper, 300 NY 434). It has not done so. New York’s interests in providing coverage under a policy issued in New York for an accident occurring in another State are (1) to protect the New York owner or New York operator from the criminal responsibility that may result from driving the vehicle in the other State without coverage in the amount required by the laws of that State and (2) as a matter of reciprocity, to protect the State where the accident occurred and the persons injured in that State against expenses and damages resulting from the injury to the same extent that the laws of that State require. A possible secondary purpose may be through the operation of reciprocity to obtain for New York residents injured by an out-of-State vehicle operated in New York the higher limit of coverage required by the other State, although that hardly seems probable because it would be most unusual for a policy issued in a higher limit State to provide that if the vehicle is operated in a lower limit State the coverage of the policy as to an accident there occurring would be reduced to the lower limit. In any event, none of those purposes has any bearing on the facts of this case, at least until an order of suspension of Padilla’s nonresident operating privilege has been issued by North Carolina, for until that time Padilla is not required by North Carolina law to have any insurance and cannot be subjected to any criminal responsibility. Neither New York nor North Carolina requires $15,000 coverage for a New York registered vehicle when operated in North Carolina for less than 30 days. Nor is it reasonable to interpret New York’s law, which requires only $10,000 coverage for the protection of a New York resident injured in a New York registered vehicle in an accident occurring in New York, as intended *174 to require .$15,000 coverage for a New York resident’s injuries, simply because the injury to the New York resident in a New York registered vehicle occurred in a State which requires of its own registered vehicle owners but not of out-of-State vehicle owners, coverage of $15,000.
I would reverse and direct the entry of judgment declaring that the limit of Country-Wide’s obligation under the Padilla policy to Nieves Rodriguez is $10,000.
Chief Judge Cooke and Judges Gabrielli and Wachtler concur with Judge Fuchsberg; Judge Meyer dissents and votes to reverse in a separate opinion in which Judge Jasen concurs; Judge Jones taking no part.
Order affirmed.

 Thus, the 1957 act describes the 1953 act as “relating to proof of financial responsibility required of each operator and each owner of a motor vehicle involved in an accident, and relating to nonpayment of a judgment” (NC Gen Stats, § 20-314 [italics supplied]).